The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Robert J. Steigman presiding. Thank you, Mr. Bailiff. Good afternoon, counsel. This is our 1st case this afternoon. It's 425-0295. The State of Illinois v. Brandon Taylor. I'd ask counsel for the appellant, please state your name. Grace Palacio for the appellant. Thank you, counsel. Counsel for the appellate, please state your name. Timothy J. Londrigan for the State, Your Honor. Thank you, counsel. Ms. Palacio, is that pronounced correctly? Ms. Palacio? Perfect. Thank you. Thank you. You may begin your argument at this time on behalf of the appellant. May it please the court. My name is Grace Palacio and I represent the appellant, Brandon Taylor. Mr. Taylor was convicted under a theory of accountability, a first-degree murder, and sentenced to a term of 57 years in prison. The only evidence tying Mr. Taylor to this offense was the testimony of co-conspirator Thomas Hawkins, who only testified in exchange for full immunity and DNA found in a cigarette recovered from the scene. However, in this case, the State's DNA expert, Heather May, failed to present an adequate foundation for her conclusion that Mr. Taylor's DNA was part of the DNA mixture found on the recovered cigarette. Mr. Taylor- Counsel, counsel, good afternoon. I know that you're just barely into your argument, but you started with the issue of the foundation and proper foundation. And I noted in studying and at your briefs that you rely heavily on people versus Safford. But in doing that, my question is, are you not ignoring cases since then that have referred to it as an outlier and heavily criticized this case? And given that situation, why should this court follow it now? Yes, I recognize that I cite heavily to Safford, and I do recognize post-Safford that there were a string of cases that rejected its line of thought. But more recently and after Safford, the Illinois Supreme Court in People v. Murray then reaffirmed the logic of Safford saying that, unlike these cases that say that Safford was considered incorrectly, what, in order to admit expert testimony, that expert needs to provide reasons for their conclusions. And so whereas in Safford, the Safford court found that that fingerprint expert did not provide enough reasons for their ultimate conclusion that that defendant's fingerprint matched the print that was collected. Similarly in Safford and here, that the expert in Murray also did not provide enough reasons for their conclusion that that defendant was part of a gang. Here, Ms. May did not provide enough reasons for her testimony that the DNA found at the scene included a DNA profile of Brandon Taylor. So while cases post-Safford may have rejected that line of thought, much more recently, the Illinois Supreme Court cleared up and affirmed what Safford was saying, or at least affirmed the logic behind Safford saying that you need to give reasons for your conclusions. You cannot just say you should trust me because I am an expert. You need to give reasons supporting those conclusions in order to lay a proper foundation. Counsel, with regard to your answer, you just mentioned the Supreme Court decision in Murray, and if I'm correct, you write in your brief, quote, in Murray, the court held that Rule 705 unambiguously requires that an expert, quote, articulate the reasons for his opinion, unquote, and also that the Supreme Court noted that although Rule 705 does not require an expert to testify to all underlying facts and data before giving an opinion, it nevertheless held that where the expert only provided a general reference to the source of underlying facts and data underlying his opinion, that this was not sufficient to satisfy Rule 705's requirement that an expert explain the reasons for an opinion. Is that your position? Yes, sir. Also, your reply brief seemed to repeat all this when you said that all the states supporting cases, quoting from page 20 of your reply brief, predate the Supreme Court's most recent decision regarding the admission of expert evidence under Rule 705, the Murray case again, which specifically held that Rule 705 unambiguously requires that an expert articulate the reasons for his opinion. Is that your position? Yes. Well, the question I have concerns the Murray case. Were there any dissents or special concurrences in that case? I believe I'm, you know, off the top of my head, I don't remember exactly what any dissents or concurrences may have said. If you could... Well, let me help you. Okay. There was a special concurrence, and the, excuse me, the special concurrence was written by Justice Kilbride, and it was joined in by then Chief Justice Lloyd Carmeier. Do you recall that? If you could point me to what exactly? There was also a dissent in that case. Justice Rita Garman dissented an opinion joined by Justices Robert Thomas and Mary Jane Tice. The reason I ask you about this is regarding the holding that you cite, the particular line from then Justice, now Chief Justice Neville, that merely identifying the sources, the source of those facts and data by an expert without explaining reasons for his opinion, fails to prove the elements of the offensive and lawful position of a firearm restricting member. You cite that as the opinion of the Supreme Court of Illinois, do you not? I do. How many Supreme Court Justices joined in that phrase? I don't, I don't know off the top of my head, I'm sorry. Well, I can answer your question, there were two.  Justice Neville and Justice Ann Burke. Justice Kilbride's specially concurring opinion, joined in by Justice Carmeier, explicitly disagreed in the very first paragraph of his special concurrence with what you are citing as the holding of the Supreme Court. He said, I agree with the result in most of the jury's analysis, but I do not join its discussion of the Illinois rule of evidence 705, including, this is his first sentence by the way, including that the rule unambiguously requires that Detective Raymond articulate the reasons for his opinion. Wouldn't you say that's not agreement with what you claim to be the majority opinion? Can you repeat that question one more time, sir? The very first paragraph of Justice Kilbride's specially concurring opinion, joined in by then Chief Justice Carmeier, reads, I agree with the result in most of the majority's analysis, but I do not join in its discussion of Illinois rule 705, including that the rule will unambiguously requires that Detective Damon articulate the reasons for his opinion. He said, says that discussion creates a necessary tension between this decision and our longstanding rule in Wilson versus Clark. Doesn't that undermine what you are claiming is the majority opinion of the Supreme Court? I argued this in my reply that I don't think that it undermines it. I think it's just a continuation of both parties agree that in order for expert testimony to be admissible, it needs to be shown to be reliable. And so unfortunately, in this case, Heather May's testimony, because she doesn't give any reasons, because she doesn't give any explanations, she doesn't give much description at all. There's nothing here to show that it is reliable. The lack of reasoning, the lack of showing of reliability is something that is required and courts do not blindly accept an expert. Well, you keep on saying it's required, but I just mentioned to you this special concurrence. Now let me mention the dissent. Justice Garmon dissented, joined in by Justice Robert Thomas and Justice Mary Jane Tice, and in her dissent, she strongly disagreed, explicitly pointing out the language you are now saying is the opinion of the Illinois Supreme Court and said, no, it isn't. And that she disagreed at length and going into great explanation as to why Justice Neville's claim, the one you're now citing to us, was wrong. So my question is this, with regard to your claim about the Murray case as precedent, why shouldn't we view that as being the decision, that portion of it that you cite, of only two of the seven of the Illinois Supreme Court justices, with the other five explicitly rejecting that analysis? I would argue that the logic of Neville, that Chief Justice Neville gave, is aligned with precedent saying, like I said, that in order for expert testimony to be admissible, it must be shown to be reliable. And unfortunately here, there is nothing in Heather May's testimony, there is not much substance to it. You didn't answer my question, counsel. My question is, what's the opinion of the Illinois Supreme Court on that point? There are five justices who disagreed with the two who are the basis of your claim. Isn't that correct? Correct, but I also would argue that because the Illinois Supreme Court ultimately ruled that that conviction should reverse based on a lack of sufficient evidence because of the lack of foundation for that element of the offense, that it ultimately shows that we still need to show that in order for expert testimony to support a conviction, there must be some kind of foundation laid for an expert testimony. That's what was explicitly rejected by five of the seven justices who said that that's inconsistent with rule 705 and its holdings of Wilson versus Clark, that it's a question what any deficiencies in the expert's testimony is a matter going to the weight, not to the admissibility. Isn't that correct, counsel? Well, I think the weight would go to, you know, if the expert had laid any kind of foundation at all, and unfortunately here, what is lacking in the expert's testimony is so much so that we can't just say because she testified to these very general, very broad explanations that there was any kind of foundation laid for her testimony at all. For example, the state cites to Wilson versus Clark saying that, you know, you don't have to present facts or data in order to admit testimony. But if we look at Wilson in itself, that had to do with a doctor who testified using a hospital record. And this court and the Illinois Supreme Court held that even though he did not testify to the facts and the data underneath it, because hospital records are considered to be so reliable, then that was sufficient, that that was a sufficient foundation. Unfortunately here with she doesn't provide any information that I would argue lays any kind of foundation. So let me conclude this discussion by pointing out that in your initial brief, you cite to the Murray case 14 separate times. In your reply brief, you cite to it 16 separate times. And in none of these cases do you ever point out that this is a plurality opinion joined in by only two of seven justices with the other five not just not joining in, but explicitly and repeatedly and emphatically rejecting the position you are arguing to this court is the position of the Illinois Supreme Court. Do you have anything you want to say about that? You know, in that case, I would just argue that this court should follow the logic that Justice Neville laid out. I think it is the most logical in terms, especially when we look at this case in particular. Aren't you supposed to call to this court's attention cases and accurately represent what they said? Yes, sir. I believe as I presented it, that was the ruling of the ruling of the Illinois Supreme Court when two of seven justices joined in on one point and five of the seven rejected. How could that be the ruling of the court? I agree. It's two of the two of the justices, but I would in turn then argue that this court should follow the logic laid out by Justice Neville and continue with your argument. I'm sorry. You may continue with your argument. Okay. I think we should start by discussing Ms. May's testimony and just what was lacking about it. She did not explain DNA's makeup in any scientific terms. She did not explain a name, the kind of testing that she did. She did not give the reasons for why what she analyzed was shown to be consistent with Mr. Taylor's DNA. Ultimately, she did not lay a foundation and courts do not just blindly accept the foundation because an expert said so. So, we're here because she did not give any reasons. She did not give any indications that what she was testifying to was reliable. We've seen in other cases that other DNA experts talk about PCR testing, YSTR testing, STR testing, and then they say that this is generally accepted in their field. There is nothing in Ms. May's testimony to say that what she did was accepted or reliable in any kind of way. Essentially, she made her argument so basic that there is no actual science there or any showing of expertise or any foundation upon which we should say that her expert testimony is reliable, so much so that it amounts to a proper foundation in order for the admission of this expert testimony. At the end of the day, in order for expert testimony to be presented and admitted, there needs to be showing that there is reliability. Unfortunately, there is just nothing in her testimony that supports any finding of reliability. So, with that in mind, if there's no reliability, it should not have been admitted and her testimony would not have supported the state's case that Brandon Taylor was one of the perpetrators of this offense. Without that, all we have is Mr. Thomas Hawkins' testimony, which we should not believe because it was unreliable given the fact that he testified in exchange for full immunity. And courts have held that, you know, when we see an accomplice testifying, that their testimony should be viewed with suspicion and only accepted with great caution, and especially when there comes a promise of leniency or immunity. And accomplice testimony must rise to a level of absolute conviction, and Mr. Hawkins' testimony did not rise to that level. So, for that reason, yes, ma'am. Go ahead. For that reason, finish your sentence. I agree that the state's evidence failed to prove Brandon Taylor guilty of this offense beyond a reasonable doubt. With respect to Hawkins and his testimony, the trier of fact knew about this agreement, knew that he got total immunity. So, they had the opportunity to evaluate his credibility with all that information, did they not? They did not. But I would also argue that the problem with the DNA evidence is that it then elevates what kind of credibility he has. Courts have found that DNA is found to be so convincing to jurors and courts and triers of fact that they will accept just DNA evidence alone as overwhelming evidence. So, even considering the fact that Mr. Hawkins had, you know, credibility issues, the fact that his testimony was then supported by DNA evidence that I argue should not have been admitted because it lacked foundation, the trier of fact may have overlooked his lack of credibility and found, well, you know, we don't believe him, but the fact that there is DNA evidence is enough for us to convict. Secondly, and alternatively, if this court does not find reason to reverse outright, I would argue that the trial court's error in admitting the DNA evidence without a proper foundation was error that requires reversal and remand for a new trial. And although Mr. Thomas acknowledges that this error was not properly preserved, this can be considered under both prongs of plain error. As we just discussed with sufficiency, the evidence was closely balanced where the only evidence was this DNA evidence with a lack of foundation and Thomas Hawkins' unbelievable testimony. And given that the evidence is closely balanced, this court can also consider it under serious error because, as I discussed, DNA evidence is often viewed as infallible by triers of fact. And Mr. Taylor was effectively doomed by the DNA expert's testimony. And it follows that the introduction of the DNA evidence without proper foundation was prejudicial and constituted serious error. If this court does not find that plain error is appropriate, Mr. Taylor alternatively argues that counsel was then ineffective for failing to object to the lack of proper foundation for this DNA evidence and subsequently after that for failing to cross-examine the DNA expert about her conclusory findings, especially where counsel knew as shown in post-trial discussions, how important this DNA evidence was and how important it was to condemning Mr. Taylor given the weakness of Mr. Hawkins' testimony, counsel was aware that the DNA evidence was the more damning of the testimony. To conclude, where the state does lay a proper foundation for the expert testimony and Thomas Hawkins' incredible testimony was insufficient to therefore prove Mr. Taylor's guilt beyond a reasonable doubt, we ask that this court reverse this conviction outright or alternatively find that the admission of the expert testimony was improper and reverse and remand for a new trial. And finally, counsel stands on the arguments in the briefs about excessive sentence. Thank you. Thank you, counsel. Mr. Lodgigan, on behalf of the appellee, you may make your argument at this time. Thank you, your honors. May it please the court, counsel. I suppose when I was looking at Murray, my initial impression of that case was simply that it didn't support what the defendant is arguing it stands for in the first place. And I apologize for not being more clear about the concurrence and dissenting opinions issued in that case. When I'm taking a look at it, you know, what struck me is that its defendant is taking that decision and standing it on its head. The Murray decision had nothing to do with the exclusion of evidence, which is what the defendant is attempting to accomplish this afternoon. She's arguing that this case stands for the proposition that there must be some basis for the opinion before it can be determined to be based on something reasonable. That's not Murray at all. Murray found that there's insufficient evidence offered by the state, specifically whether or not the state has established that the defendant was guilty of being a participant in a street gang. And that term had a specific definition pursuant to the issue or the statute at issue in that case, you know, to suggest now that the Murray decision stands for the exclusion of expert testimony. And therefore, if we accept that exclusion, then the state has failed to meet the elements of the defense. Turns Murray inside out. Regardless, you know, I think the case law is very clear on this subject and has been for decades. Rule 705, although it may require some evidence to support some reliability, that term has clearly been defined before. To determine whether the information is reliable, the court must ask whether or not it is of a type reasonably relied upon by experts in a particular field informing opinions or inferences on the subject. That's how one defines whether or not something is reasonably reliable. And that is specifically what was done in this instance. You know, I guess I just have an honest disagreement with defense counsel on what constitutes no basis whatsoever or a reasonable basis. Here the expert testifies at length as to how she performed her analysis and made her conclusions based on the DNA profiles that she developed and compared with one another. She goes into what DNA is, how it's obtained, the fact that it doesn't degrade by being, I think it does degrade under certain chemicals, but not from environmental conditions. She then goes into how DNA does not change with age. She explains the four steps that she took in doing her analysis. The first one being extraction, then quantitation, amplification, and then she generates a profile. She was then offered State's Exhibit 111, which was a cigarette butt. She said that she tested that cigarette butt and performed a profile, determined that there were two different profiles on that cigarette butt. And one of them matched the reference sample of the defendant in her opinion. She also stated that her DNA analysis that she just described, those four steps, were used by experts and were generally accepted in the scientific community as a proper basis by which to conduct a DNA analysis and comparison. This is hardly a type of evidence in a slip shot or without any evidentiary background. It has nothing to do with Murray and Murray's discussion of how the state willfully failed to establish the elements of the offense that it was charging the defendant with in that matter. And, you know, the rest of the law as cited in my brief, I think, is consistent with the cases cited in Murray, as a matter of fact, those that Murray cited with reference to 705. And the only other case that actually deals with this particular issue, one out of the first district, has been severely argued. And I would suggest, in fact, that it's been overruled by Safford. It simply is not good law. It was improperly analyzed in that initial first district opinion. And, you know, I think it's just poorly reasoned. That's not the rule. It's not what 705 stands for. And I think the dissent in Murray made that pretty clear. I also don't think that the evidence in this matter was unreasonable or anywhere close to being questionable. Counsel refers to the testimony of Hawkins as consistently being unreliable. But it doesn't make any sense that he would point out the defendant and the defendant alone as the only person that he's going to throw under the bus in this matter. He, you know, describes himself as a participant. He gives the other two or three participants in this crime. No one's suggesting that he misidentified any of those individuals. He gives particular facts as to where items taken from the residence can be discovered. The police give testimony, you know, that suggests that the facts and evidence offered by Mr. Hawkins was consistent. So there's no reason for Hawkins to want to identify improperly the defendant in this matter. On the contrary, if he's discovered making any evidence up or testifying falsely, he calls into jeopardy the very offer that he's attempting to accomplish, you know, the immunity that he was given. So he has every reason to testify truthfully and no reason to falsely against this defendant. And for those reasons, Your Honor, we would hold that the ruling of the lower court be affirmed, including the sentence given this defendant. Thank you, counsel. Ms. Palacios, on behalf of the defendant, do you have any rebuttal argument? Yeah, briefly. With regard to Heather May's testimony and whether it presents any level reliability, I would argue that it does not, just because it is so general and so broad. When she describes DNA, she doesn't say what it is made of. She just says it's a blueprint. She doesn't describe how it demonstrates an individual's genetic characteristics. She doesn't say any words such as chromosomes or locus or alleles. So when she talks about doing this testing, again, which she does not name, all she says she does is she looks at specific areas. What does that mean, specific areas? So she says specific areas, and then she finds that it's consistent. But there is nothing there to indicate that it is reliable in any kind of way, because she does not go into detail about how this testing is done, other than saying that she received this evidence, and then she amplified it and analyzed it. But there's nothing beyond You are arguing strongly that Safford provides support for your position. That case was decided 17 years ago. Has any decision from the Illinois Appellate Court, Illinois Supreme Court, cited Safford approvingly? Aside from my argument that Murray seems to, Justice Neville's portion of Murray supports the rationale that reasons need to be given. I understand your argument that somehow the language used by Justice Neville and Murray is consistent with and supports Safford. That wasn't my question. My question was, is there any decision of an Illinois Appellate Court or the Illinois Supreme Court citing Safford approvingly? Not that I'm aware. Are you aware of the several decisions that strongly, that cited and strongly disapprove? I'm aware of opposing counsel cited people versus Simmons. And I would say that even within Simmons, the facts that that expert testified to are much more descriptive and indicative reliability than what Heather May presented here. That fingerprint expert talks about lands and grooves and looking at those characteristics in order to find that there was a match. Whereas here, Heather May does not describe anything in specific that she's looking at. What is it that she's comparing? How does she come to the conclusion that is consistent with Mr. Taylor's DNA? There's simply nothing in her testimony. There is no there, there. There's nothing of substance. The important part of Simmons, however, is that the first district explicitly rejects the analysis in Safford. Isn't that true? True. But Simmons also recognizes that a proper foundation must be laid. And at this point, given Heather May's testimony and the lack of any kind of substance in it, I don't know how we can find that there is a foundation here. So Simmons still approvingly holds that there must be a foundation. Given the inadequacies of Heather May's testimony here, I simply don't see how there is a foundation here upon which we can say this is acceptable expert testimony. Why should we give any weight to the analysis provided in Safford when no court has found it persuasive or useful in the last 17 years and several have rejected it? I think we can look at least at the reasoning of Safford, at how it pointed out inadequacies in some experts' testimony as to what their foundation is. So if we do not agree that maybe that expert in Safford did not lay a proper foundation, I think if we look at all the cases that are cited in these briefs, we can see just how inadequate Heather May's testimony is, because there are, there's no scientific question there at all. My question is, why should we give any weight to the analysis in Safford? And I know you're familiar with the case, and I'm sure you're familiar with the dissent of one of the leading lights of Illinois jurisprudence, Justice Warren Wilson, who dissented in that case, and you would think that should have been persuasive, but why, given his dissent and the fact that no court has approved it, why should we approve that analysis? I would note that Justice Wilson said that the foundation in Safford was barely enough, and I would argue that the foundation presented in Safford is much greater than the foundation in Safford. Well, see, just going back to the facts, the important thing is he rejected the analysis of the majority in Safford. Remember that? Yes, but he... Was Justice Wilson's dissent wrong? I'm not saying that it's wrong, but I would also point out that he is acknowledging that the foundation laid in Safford was barely enough, which indicates that there has to be some foundations that are inadequate that would lead a court to have to reject its admission. Thank you, counsel. Your time is up. The court will take this matter under advisement to issue a decision in due course, and we'll stand in recess at this time.